# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

ERIC COLLINS,

           Plaintiff,

   v.

AUTOZONE, INC., *et al.*,

           Defendants.

Case No. 2:22-cv-00316-CDS-BNW

**ORDER**

Before the Court is Plaintiff's Motion for Sanctions due to Spoliation of Evidence. ECF No. 50. Defendant opposed. ECF No. 53. Plaintiff replied. ECF No. 58. The Court noted factual issues were in dispute, requiring an evidentiary hearing. ECF No. 29. After several requests for an extension, the Court held an evidentiary hearing on November 7, 2023. ECF No. 75. As explained below, the Court finds Defendant spoliated evidence and that such spoliation prejudiced Plaintiff. Nevertheless, the Court does not find Defendant had the intent to deprive Plaintiff of this information. For that reason, sanctions are appropriate under Rule 37(e)(1)—and not under Rule 37(e)(2). In its discretion, the Court will sanction Defendant as explained below. Plaintiff's motion is granted in part and denied in part.

## I.   <u>Allegations in Amended Complaint at ECF No. 1</u>

The plaintiff alleges that while working at AutoZone on February 21, 2021, under the supervision of store manager Jimmy James, he experienced unwelcome sexual advances. Initially, Mr. James began asking the plaintiff questions of a sexual nature, which continued and escalated throughout the day. Later, after allowing another employee to leave early, Mr. James allegedly closed the store (well before closing time), leaving only the plaintiff and Mr. James inside.

Plaintiff alleges Mr. James continued the inappropriate behavior, culminating in Mr. James following the plaintiff around the store with a dildo. Plaintiff attempted to distance himself from Mr. James, who ultimately secluded himself from view of surveillance cameras to masturbate. As a result of these events, Plaintiff contacted his family to come pick him up before his shift ended.

Plaintiff alleges he complained and, as a result, was compelled to take a leave of absence for approximately one month.

Given these allegations, Plaintiff's complaint asserts claims for (1) Title VII sex discrimination, (2) Tite VII retaliation, (3) Intentional Infliction of Emotional Distress, and (4) Negligent Hiring, Supervision, Retention and/or Training.

**II.**     **Arguments by the parties**

    **A.  Plaintiff's argument**

Plaintiff argues the store in question had surveillance cameras that captured at least portions of the events on February 21, 2021. He argues that Lorena Casson, AutoZone Regional Human Resources Manager, found the video relevant to the issue of sexual harassment. As a result, she viewed it and took screenshots of it. But the video was never downloaded. It was "overwritten or recorded over" and no longer exists. This is so even though Plaintiff sent a preservation letter on March 23, 2021.

Plaintiff explains the video is crucial to his case, as it would have shown a panoramic view of the store which would have substantiated Plaintiff's version of the events on the day in question. For example, Plaintiff argues the surveillance would have captured the allegation that Mr. James was following Plaintiff around the store and that Mr. James did not allow Plaintiff to leave the store. Lastly, Plaintiff explains that the screenshots Ms. Casson took of the video are not probative of Mr. James' behavior.

Plaintiff argues that both under Fed. R. Civ. P 37 and the court's inherent authority, sanctions are warranted in this case. He argues he will suffer prejudice as he will not be able to corroborate portions of his allegations. As a result, he requests that (1) Defendant be prohibited from arguing the incident did not occur, and (2) the jury be instructed to draw an adverse inference that the evidence in the video was not favorable to Defendant. Plaintiff argues the failure to preserve was willful, allowing for these specific sanctions. And in any event, Plaintiff argues there is also evidence of bad faith.

///

///

### B.  Defendant's argument

Defendant starts out by arguing that Plaintiff is—at best—speculating about what the video may have shown. In this vein, it argues that a threshold inquiry is whether the video contained any relevant evidence before determining the issue of spoliation. Given the speculative aspect of the video, Defendant argues there could not have been any spoliation.

In addition, Defendant relies on Ms. Casson's review of the video in question, and her findings that the video did not reveal any sexual harassment, to show that the video is not relevant. Moreover, Defendant relies on Plaintiff's statements during the investigation by Ms. Casson that (1) the video did not provide corroboration for the events in question, (2) Mr. Jones' masturbation took place outside the view of the surveillance cameras, and (3) Ms. Casson did not hide anything from him, for its arguments that the video did not contain any relevant evidence.

Despite the lack of relevance, Defendant explains that Ms. Casson still asked loss prevention to range lock the video, but that a system upgrade inadvertently deleted the video. In turn, Defendant argues this shows no culpable state of mind accompanying the destruction of this video.

Lastly, Defendant argues there is no prejudice to Plaintiff given Ms. Casson's testimony as to what the video showed and the screenshots that exist of the video. Nevertheless, Defendant contends that, in the event this Court finds sanctions to be appropriate, those requested by Plaintiff are too harsh and contradict known facts.

### Plaintiffs' reply

Plaintiff starts out by arguing the Ninth Circuit's decision in *Leon* does not condone a party' assertion of irrelevance when the party asserting spoliation is unable to view the video to rebut the proposition. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006).

Moreover, Plaintiff explains he never saw the video in question. Instead, he only saw the screenshots Ms. Casson showed him. As a result, he contends it is misleading for Defendant to argue that Plaintiff *agreed* that the video in question could not have corroborated the events in question. And while Plaintiff admits that Mr. James was trying to avoid the cameras, he argues he is entitled to see whether Mr. James was successful in that endeavor.

In addition, he argues that the importance of the video goes beyond whether it captured Mr. Jones masturbating, as his claim comprises the totality of the acts that took place during his shift—not just that one act. To that end, he argues the video would have recorded certain events that corroborate his allegations. Specifically, Plaintiff contends that (1) the harassing comments started when another employee, Esteban Nevarez, was outside with another customer, (2) Mr. James sent Mr. Nevarez home, (3) that Mr. James locked the front door after Mr. Nevarez left, (4) Mr. James made several improper comments once he was alone in the store with Plaintiff, (5) Mr. James followed Plaintiff around the store as Plaintiff was trying to get away from him, (6) Plaintiff tried to take out the trash to avoid Mr. James, (7) Plaintiff tried to remain within camera view while Mr. James started to masturbate in one of the store aisles and texted his parents to come get him, and that (8) when his parents arrived, he yelled that he was leaving but Mr. James came running and interfered with his ability to unlock the door. Plaintiff argues that, at the very least, the cameras would have recorded: (1) Mr. Navarez exiting the store to help a customer and when he went home, (2) Mr. James locking the front doors after Mr. Navarez left, (3) the interactions between Mr. James and Plaintiff, (4) Plaintiff texting (his parents for a ride), and (5) Mr. James running from the aisle where he was masturbating to prevent Plaintiff from leaving the store when his parents arrived.

While Plaintiff asserts that Mr. James went to one of the aisles to masturbate, such that the camera may not have recorded the incident, he points out that even Ms. Casson admitted she may have seen Mr. James' head on video in one of the store's aisles. Plaintiff contends this may be the aisle where the masturbation took place.

Plaintiff maintains he is prejudiced as the video would have corroborated at least portions of his allegations, to include his body language and whether it showed discomfort, fear, etc.

Plaintiff also argues that however "inadvertent" the deletion of the video may have been, Defendant made no efforts to preserve it. Although Ms. Casson "range locked" the video to prevent it from being overwritten, it did not download it or otherwise save it. Plaintiff contends this may not even comply with Autozone's own policies.

1    Plaintiff continues to argue the requested sanctions are proper and that it need not

2  establish Defendant acted in bad faith. Instead, he argues negligence is enough. He argues

3  Defendant is currently relying on Ms. Casson's review of the video to argue that it did not contain

4  any evidence of sexual harassment. The requested sanction would preclude Ms. Casson from

5  doing this.

6    **III.    Analysis**[1]

7    Spoliation is the destruction or significant alteration of evidence, or the failure to preserve

8  property for another's use as evidence in pending, or reasonably foreseeable litigation. *United*

9  *States v. Kitsap Physicians Sys.*, 314 F.3d 995, 1001 (9th Cir. 2002) (citing *Akiona v. United*

10 *States*, 938 F.2d 158, 161 (9th Cir. 1991) (a party engages in spoliation "as a matter of law only if

11 they had 'some notice that the evidence was potentially relevant' to the litigation before they were

12 destroyed," altered, or lost); 7 Moore's Federal Practice - Civil § 37.120 (2023).

13   At the outset, the Court points out that Fed. R. Civ. P. 37(e) exclusively governs the remedies

14 available for the spoliation of electronically stored information ("ESI"). Fed. R. Civ. P. 37(e); see

15 also Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (stating that the new

16 Rule 37(e) "forecloses reliance on inherent authority or state law").

17   Before determining whether the Court should impose sanctions, Fed. R. Civ. P. 37(e) requires

18 the Court to assess the following four criteria: (1) whether the information qualifies as

19 electronically stored information ("ESI"); (2) whether there was a duty to preserve the ESI in the

20 anticipation or conduct of litigation; (3) whether the ESI was lost because a party failed to take

21 reasonable steps to preserve it; and (4) whether the ESI can be restored or replaced through

22 additional discovery. *Lopez v. Cardenas Markets, LLC*, No. 2:21-CV-01915-JCM-BNW, 2023

23 WL 3182658 * 2 (D. Nev. May 1, 2023). A party must preserve evidence it knows or should

24 know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant

25

26

27 ───────────────

[1] Instead of summarizing the testimony of each witness, the Court incorporates the relevant

28 testimony in this section of the order.

1    evidence. *Brown v. Reinke*, No. 1:12-cv-262-BLW, 2016 WL 107926, at *5 (D. Idaho Jan. 8,

2    2016).

3        If these requirements are satisfied, the rule authorizes two levels of sanctions. Section (e)(1)

4    permits a court, upon finding prejudice to another party from the loss of ESI, to order measures

5    no greater than necessary to cure the prejudice. Section (e)(2) permits a court to impose more

6    severe sanctions such as adverse inference jury instructions or dismissal, but only if it finds that

7    the spoliating party "acted with the intent to deprive another party of the information's use in the

8    litigation."3 Fed. R. Civ. P. 37(e)(2). Unlike Rule 37(e)(1), Rule 37(e)(2) "does not include a

9    requirement that the court find prejudice to the party deprived of the information." Fed. R. Civ. P.

10    37(e) advisory committee's note to 2015 amendment. "This is because the finding of intent

11    required by the subdivision can support not only an inference that the lost information was

12    unfavorable to the party that intentionally destroyed it, but also an inference that the opposing

13    party was prejudiced by the loss of information that would have favored its position." *Id.*

14    "Negligence—even gross negligence—in failing to retain relevant evidence is not sufficient to

15    support an adverse inference under Rule 37(e)(2)." *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605

16    F.Supp.3d 1218, 1238, No. 20-CV-07182-JCS (N.D. Cal. June 6, 2022).

17        Finally, the relevant standard of proof for spoliation sanctions is a preponderance of the

18    evidence. *See Burris v. JPMorgan Chase & Co.*, No. CV-18-03012-PHX-DWL, 2021 WL

19    4627312, at *11 (D. Ariz. Oct. 7, 2021); *Compass Bank v. Morris Cerullo World Evangelism*, 104

20    F. Supp. 3d 1040, 1052-53 (S.D. Cal. 2015).

21    **A.  <u>The surveillance video is relevant</u>**

22        The Court starts out by disposing of Defendant's argument that the video in question did not

23    contain relevant evidence.

24        First, the video need not have captured *all* of the alleged conduct in order to be relevant. Nor

25    does it need to capture the worst conduct (Mr. James masturbating) to be relevant. Instead, the

26    video is relevant if it could have corroborated (or disproven) at least some aspects of Plaintiff's

27    narrative. Given Ms. Casson's testimony regarding the number and position of the surveillance

28

cameras, the video would have captured several events on the day in question which in turn, would have corroborated (or not) aspects of Plaintiff's narrative. ECF No. 76-2 p. 52.

Indeed, Ms. Casson's testimony is consistent with this finding as she explained that the video showed several events that are consistent with Plaintiff's narrative (i.e. Plaintiff grabbing the trash, Mr. Navarez leaving the store, Mr. James putting the sign on the door and closing the store, and Plaintiff by the front of the store (ostensibly waiting to be picked up by his parents). ECF No. 76-1 pp. 50, 52; ECF No. 76-2 p. 202. In turn, the video may have also shown whether the video captured anything resembling Mr. James following Plaintiff around the store and whether Mr. James ran to the front door to preclude Plaintiff from leaving. Even if the video did not show Mr. James masturbating, or the sex toy Plaintiff alleges Mr. James pulled out, the video would have at least corroborated (or disproven) certain parts of Plaintiff's allegations.[2]

Second, Ms. Casson's determination that the video did not capture any sexual harassment does not make the video irrelevant. To be sure, Plaintiff need not rely on an opposing party's determination of (1) what the video captured or (2) the subjective interpretation of the events captured. In addition, Ms. Casson's viewing of the video consisted of viewing several screens simultaneously (presumably one for each camera) and reviewed it only once. Evidentiary hearing audio at 33:58-34:44 min; 37:30 min. Thus, it is very likely that she missed other events that could have corroborated (or disproven) Plaintiff's narrative.[3]

Third, Ms. Casson's actions speak to its relevance: after Plaintiff complained regarding the allegations in question, she viewed the video and believed it was important to preserve it. ECF No. 76-2 p. 59.

---

[2] Given the totality of evidence before the Court, it is unlikely that the video would have shown Mr. James masturbating. ECF No. 50-1 pp. 16, 18; ECF No. 53-3 pp. 18-19; ECF No. 76-2 pp. 175-176, 192, 195; ECF No. 76-3 pp. 4-5. At best, the video would have shown Mr. James' head in the aisle where Plaintiff alleges Mr. James masturbated. ECF No. 76-2 p. 192. Nevertheless, as stated above, the relevance of the video is not contingent on it showing this specific event.

[3] The Court disagrees with Defendant's arguments during the evidentiary hearing that Ms. Casson likely did not miss anything when reviewing the video because she knew what to look for given she (1) had previously read Plaintiff's written narrative of the events and (2) talked to Plaintiff. The fact remains that Ms. Casson was viewing five screens at once and only reviewed the video once.

Lastly, the notion that the video is not relevant given Plaintiff "admitted" to Ms. Casson (and in Court) that the video did not corroborate his allegations and that Ms. Casson did not hide anything from him is far from convincing. First, Plaintiff never saw the video to be able to make any statements as to what the video corroborated. Second, while Ms. Casson may not have hidden anything from him, the point here is that Ms. Casson likely missed certain things that were in the video.

**B.  The surveillance video is ESI**

Next, the surveillance video in question constitutes ESI for purposes of a Rule 37 analysis.

**C.  AutoZone had a duty to preserve the surveillance video**

Defendant had a duty to preserve the ESI in anticipation of litigation, as it knew or should have known that a surveillance tape that may have corroborated Plaintiff's account of the events taking place on February 21, 2021. *Perkins v. City of Modesto*, No. 1:19-CV-00126L-JOE-PG, 2020 WL 1333109, at *16 (E.D. Cal. Mar. 23, 2020). In addition, Plaintiff sent a preservation letter on March 23, 2021. ECF No. 50-1 p. 37-38.

**D.  AutoZone did not take reasonable steps to preserve the video**

Having found that Defendant had a duty to preserve the surveillance tape, the Court must next determine whether the ESI is "lost" because Defendant failed to take reasonable steps to preserve it and whether it can be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e); *see also Colonies Partners, L.P. v. Cnty. of San Bernardino*, No. 5:18-CV-00420-JGB-SHK, 2020 WL 1496444, at *5 (C.D. Cal. Feb. 27, 2020).

The 2015 Advisory Committee Notes highlight some factors a court should consider when deciding if a party took reasonable steps to preserve lost ESI: (1) a party's "good-faith operation of an electronic information system"; (2) a "party's sophistication with regard to litigation"; (3) "the extent to which a party knew of and protected against such risks"; and (4) whether the information is "destroyed by events outside the party's control," such as party's computer room flooding or a malign software attack. *See* 2015 Advisory Note.

There is no doubt that Ms. Casson "range locked" the video in an attempt to preserve it. Ev. hrg. at 1:13 min. The question is whether this constituted "reasonable steps to preserve it." The

evidence before the Court is that despite Ms. Casson's efforts, the contents were overwritten when AutoZone changed its surveillance system. Ev. hrg at 31:38 min.  While there is no evidence that Ms. Casson was aware the video would be overwritten, AutoZone—and by extension Ms. Casson—should always protect against such risk by downloading or otherwise saving the video in question. AutoZone is a national entity who ought to be sophisticated with litigation matters and the duty to preserve evidence. Defendant had a duty to make copies of the surveillance in question and not rely on the system alone to preserve it. At the very least, AutoZone should have a policy in place for situations in which software and hardware (that contain videos such as this one) is replaced. There was no testimony regarding such policy. To the contrary, Ms. Casson did not even know what AutoZone did with the hardware and software or what steps are usually taken when such a switch occurs. Ev. hrg 1:37-1:39. Here, the video was not destroyed by events outside of Defendant's control. In short, AutoZone did not take reasonable steps to preserve the video.

### E.  The surveillance video cannot be replaced

Lastly, while Ms. Casson has a few screenshots of the video in question, the video itself cannot be restored or replaced. According to Ms. Casson, the video has been "lost." Ev. hrg at 46:36. The device that stored the video was removed from the store and nobody knows what happened to it. Ev. hrg at 48:17. In turn, the Court finds the video cannot be replaced.

### F.  Sanctions

The court finds by a preponderance of the evidence that the video in question has been spoliated. Next, the Court turns to the issue of sanctions.

The Court does not find that AutoZone acted "with the intent to deprive another party of the information's use in the litigation." Ms. Casson range-locked the video in question in order to preserve it. Ev. hrg at 40:25 min. She also testified that once a video is range-locked it cannot be overwritten or recorded over. Ev. hrg at 31:38 min. In the past, range-locking video has prevented deletion. Ev. Hrg at 1:31:18. In addition, she took screenshots of the video. Ev. Hrg 1:21:15-1:30 min.  A party who intends to deprive the opposing party of information would not have taken screenshots of the surveillance video. Especially when some of the screenshots can be used very

1  effectively against AutoZone at trial.[4]  While the Court finds it was grossly negligent for

2  AutoZone not to have downloaded a copy of the surveillance video, that is not enough for

3  sanctions under Rule 37(e)(2). *Meta Platforms, Inc.*, 605 F.Supp.3d at 1238.

4      But the Court finds that sanctions are appropriate under Rule 37(e)(1), as Plaintiff has been

5  prejudiced by the destruction of this video. "Prejudice exists when spoliation prohibits a party

6  from presenting evidence that is relevant to its underlying case." *Fast*, 340 F.R.D. at 339 (internal

7  quotation marks and citation omitted). Courts have the discretion to determine if the spoliation of

8  evidence is prejudicial, and neither party has the burden of establishing or disproving prejudice.

9  *Hernandez v. Tulare Cty. Corr. Ctr.*, 2018 WL 784287, at *10 (E.D. Cal. Feb. 7, 2018) (citing

10 Fed. R. Civ. P. 37(e), Committee Notes on Rules – 2015 Amendment)).

11     In selecting an appropriate remedy, courts are to choose "the least onerous sanction

12 corresponding to the willfulness of the destructive act and the prejudice suffered by the victim."

13 *Apple Inc. v. Samsung Elecs. Co*., 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012). Under Rule

14 37(e)(1), the Court has broad discretion to employ measures "no greater than necessary to cure

15 the prejudice" suffered by the non-spoliating party. Such measures may include "forbidding the

16 party that failed to preserve information from putting on certain evidence" or "permitting the

17 parties to present evidence and argument to the jury regarding the loss of the information." Fed.

18 R. Civ. P. 37(e), Advisory Committee Notes to 2015 Amendment. "[I]t may be appropriate to

19 exclude a specific item of evidence to offset prejudice caused by failure to preserve other

20 evidence that might contradict the excluded item of evidence." *Id*. "The only express limitation to

21 curative measures under Rule 37(e)(1) is that they 'do not have the effect of measures that are

22 permitted under subdivision (e)(2).'" *Spencer v. Lunada Bay Boys*, No. 16-cv-02129-SJO-RAOx,

23 2018 WL 839862 at *1, 2018 U.S. Dist. LEXIS 22779 (C.D. Cal. Feb. 12, 2018).

24     First, the Court agrees with Defendant's argument that the overwhelming portion of the

25 complaint deals with verbal harassment and that the surveillance video would not have captured

26

27 _____

28 [4] The screenshots show: (1) Mr. James closing the store before closing hours and (2) Mr. James in close proximity to
Plaintiff as he is trying to leave the store.

what was said (as the video did not record sounds). The court also agrees it is more likely than not that the video would not have shown Mr. James masturbating.

But, as explained above, the video could have at the very least corroborated several pieces of Plaintiff's narrative. In addition, Plaintiff's credibility increases based on the amount of corroboration. The destruction of the video potentially precluded Plaintiff from showing the jury the number of ways in which his narrative is corroborated by the video. Given this, the prejudice is not removed by Ms. Casson's own testimony that the video did corroborate *some* aspects of Plaintiff's narrative.

The Court asked Plaintiff what, in his view, would be an appropriate sanction if the Court were to find the destruction of the video was prejudicial but that there was no intent to deprive on the part of AutoZone. Plaintiff argued the proper sanction would be to preclude either party from testifying as to the contents of the video, given that only one party had had the opportunity to view it. Defendant argues it is important to have testimony that the video did not corroborate Plaintiff's allegations as it is part and parcel of a "prompt remedial measures" affirmative defense it will assert at trial.  It wants to be able to argue that it took the allegations seriously, that Ms. Casson reviewed screenshots of the video with Plaintiff, and that ultimately Ms. Casson fired Mr. James, such that Plaintiff could have returned to the workplace.

As explained by the Advisory Committee Notes:

> Care must be taken, however, to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation.

*See* Fed. R. Civ. P. 37(e), Advisory Committee Note to 2015 Amendment. Precluding Defendant from testifying regarding the contents of the video would impact its ability to present an affirmative defense and would be more onerous than what is needed to cure the prejudice at hand.

Instead, the Court will preclude AutoZone from arguing at trial that (1) the video did not corroborate Plaintiff's allegations but will allow AutoZone to argue that a review of the video did not show Mr. James masturbating. In addition, the jury will be instructed to weigh Ms. Casson's

testimony regarding what the video showed by also considering (1) that she only viewed it once and (2) that the review of the video included watching several camera views simultaneously. The Court finds this sanction strikes a proper balance given (1) the degree of negligence on Defendant's part in failing to preserve the video, (2) the Court's findings as to what the video likely would have (and would not have) showed, and (3) the considerations outlined in the Advisory Committee Notes, including the need to impose measures that are no greater than necessary to cure the prejudice. This sanction allows AutoZone to advance its affirmative defense, as it will be able to show that the video was reviewed. At the same time, these sanctions will prevent AutoZone from gaining an advantageous position by asserting that the video fails to support the Plaintiff's narrative. Furthermore, it cautions the jury that Ms. Casson's testimony regarding the video must be evaluated in conjunction with other pertinent factors.

**IV. Conclusion**

  **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Sanctions due to Spoliation of Evidence (ECF No. 50) is **DENIED in part and GRANTED in part**.

DATED: March 11, 2024.

             _____

             BRENDA WEKSLER
             UNITED STATES MAGISTRATE JUDGE