UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Eric Collins,<br><br>　　　　　Plaintiff<br><br>　v.<br><br>AutoZoners, LLC, et al.,<br><br>　　　　　Defendants | Case No. 2:22-cv-00316-CDS-BNW<br><br>**Order Granting Defendants' Motion for Summary Judgment and Closing Case**<br><br>[ECF No. 42] |

This is an employment action brought by plaintiff Eric Collins against defendants AutoZoners LLC and Jimmy James.[1] Collins brings four claims: (1) sex discrimination under Title VII of the Civil Rights Act of 1964 (Title VII) and Nevada Revised Statutes (NRS) Section 613.330; (2) retaliation in violation of Title VII and NRS Section 613.340; (3) intentional infliction of emotional distress (IIED); and (4) negligent hiring, supervision, retention and/or training. ECF No. 29. Defendants move for summary judgment on all four counts. ECF No. 42. The motion is fully briefed. For the following reasons, I grant summary judgment and kindly direct the Clerk of Court to close this case.

I.　Background

　　A.　Collins' employment with AutoZone

On or about May 24, 2020, AutoZoners hired Collins as a part-time sales associate at AutoZone, Inc. ECF No. 29 at 3. Collins worked at AutoZone, Inc.'s store #5743 located at 3007 N. Rainbow Blvd in Las Vegas, Nevada. *Id.* James was a manager at the #5743 store and worked with Collins. *Id.* Collins alleges that James had been treated for mental health issues, specifically, schizophrenia, and that he carried a gun to work. *Id.* at 2–3; Reyes Dep., Pl.'s Ex. 1-A, ECF No. 48-1 at 13, 31:11–24.

---

[1] Defendant AutoZone, Inc. was terminated on July 21, 2022.

### B. The incident

On February 21, 2021, Collins was working a 5pm to 9pm shift with James. ECF No. 29 at 4. Collins alleges that during the shift, James began asking Collins questions of a sexual nature, such as, "Have you ever put anything in your asshole?" "How big is your penis?" and "Have you done anything sexual?" *Id.* Collins alleges that he told James repeatedly to stop. *Id.* Collins then alleges that, a few hours into the shift, James told another manager he could go home early so that James would be alone in the store with Collins and then closed the store early and locked the doors, trapping Collins in the store with him. *Id.* James then allegedly proceeded to ask Collins if he wanted a blow job, which Collins refused, and then pulled out a dildo and told Collins he could use the dildo on him. *Id.* at 5. This was allegedly followed by numerous other advances, which Collins refused while James followed Collins around the store. *Id.* The harassment culminated in James allegedly masturbating with the dildo, out of sight of both Collins and the security cameras. *Id.* Collins then contacted his family and arranged to be picked up from his shift early. *Id.*

### C. The aftermath

Following this incident, Collins attempted to contact Store Manager Paul Escareno to inform him of the harassment but received no response that night. *Id.* The next day, on February 22, Collins filed a report with the Las Vegas Metro Police Department detailing the harassment. *Id.* On February 23, 2021, Collins called Human Resources and filed an internal report with Manager Lori Casson. *Id.* Casson held an interview with Collins that same day at the Regional office. Initial Interview Statement, Defs.' Ex. 21, ECF No. 42-22. During the interview, Casson asked Collins whether he was willing to return to work, and Collins responded that he was upset and needed time off. Collins Dep., Defs.' Ex. 1, ECF No. 42-2 at 140:24–142:12. AutoZone permitted Collins to take time off. *Id.* at 144; 3/25/21 Letter from Lori Casson to Eric Collins, Defs.' Ex. 28, ECF No. 42-29. Collins also told Casson that, if he were to return, it would need to be a different store location as James lived close to the #5743 store, so Casson identified two

other stores at which he could work. Collins Dep., Defs.' Ex. 1, ECF No. 42-2 at 141:9–42:15; 4/1/21 Letter from M. Wood to Collins' counsel, Defs.' Ex. 30, ECF No. 42-31. The next day, on February 24, 2021, Casson called Collins and told him that she was checking in on him and also seeing whether he wanted to be put on the schedule at another AutoZone store. Collins Dep., Defs.' Ex. 1, ECF No. 42-2 at 143–44; Redacted cellphone records of Casson from 2/22/21–3/21/21, Defs.' Ex. 26, ECF No. 42-27. Collins told Casson that he was not ready to return to work. Collins Dep., Defs.' Ex. 1, ECF No. 42-2 at 143–44, 158. James was not allowed to work during the pendency of the investigation. *See* James Timecards from 1/3/21–3/9/21, Defs.' Ex. 18, ECF No. 42-19.

Meanwhile, Casson continued her investigation by reviewing the store video footage; the timecards for the night shift; the store alarm open and close report; and the daily sales, cash count, and register sweeps. HR Investigation Form: IV-5743-HR-2001- 0001, Defs.' Ex. 25, ECF No. 42-26. Casson interviewed two other employees—Kevontae Morris and Justin Reyes—as part of her investigation. Morris Initial Interview Statement, Defs.' Ex. 22, ECF No. 42-23; Reyes Initial Interview Statement, Defs.' Ex. 23, ECF No. 42-24. Casson also interviewed James, where he denied engaging in any sexual harassment, but did, however, admit that he violated other store policies during the shift, such as closing the store early without permission and staying at the store beyond the end of his shift. James Initial Interview Statement, Defs.' Ex. 24, ECF No. 42-25.

Though Casson could not substantiate the sexual harassment allegations, she recommended that James's employment be terminated. Defs.' Ex. 2 at 33:21-34:7, 47:24–48:10; Defs.' Ex. 3 at 168:11–16. On or around March 3, 2021, James's employment was terminated. James Corrective Action Review for Termination, Defs.' Ex. 31, ECF No. 42-32. On March 10, 2021, Casson called Collins to discuss the outcome of the investigation and to see whether Collins was ready to return to work. Casson left a message for him to call her back after Collins did not answer or return her call. Redacted cellphone records of Casson from 2/22/21–3/21/21, Defs.' Ex.

26, ECF No. 42-27; 3/25/21 Letter from Lori Casson to Eric Collins, Defs.' Ex. 28, ECF No. 42-29; Collins Dep., Defs.' Ex. 1, ECF No. 42-2 at 144–146:19. On March 19, 2021, Casson called Collins again and left another message that was unreturned. Redacted cellphone records of Casson from 2/22/21–3/21/21, Defs' Ex. 26, ECF No. 42-27; 3/25/21 Letter from Lori Casson to Eric Collins, Defs.' Ex. 28, ECF No. 42-29; Exhibit 1 at 146:21-148:9; Collins Dep., Defs.' Ex. 1, ECF No. 42-2 at 146:21–148:9. On March 23, 2021, Casson tried again. Collins did not answer or return her call. Redacted cellphone records of Casson from 2/22/21–3/21/21, Defs.' Ex. 26, ECF No. 42-27; Collins Dep., Defs.' Ex. 1, ECF No. 42-2 at 148:10–149:19.

On March 25, 2021, Casson sent Collins a letter stating that she had been trying to reach him multiple times post-investigation about returning to work at a different store location and that Collins had failed to respond or return to work as of February 22. 3/25/21 Letter from Lori Casson to Eric Collins, Defs.' Ex. 28, ECF No. 42-29. The letter explained that AutoZone had honored his request to take time off during the investigation, but that additional leave would require a Leave of Absence request and provided the company's Benefit's department contact number should he wish to go that route. *Id.* The letter further stated that Collins must either submit the necessary paperwork or contact Casson or District Manager Stephen Pizzuto no later than March 31 or AutoZone would assume he wishes to resign his employment. *Id.* Collins did not fill out a Leave of Absence or contact Casson or Pizzuto by March 31 and his employment with AutoZone ended. ECF No. 29 at 6.

## II. Legal standard

Rule 56(c) provides that summary judgment must be granted when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must not make credibility determinations or weigh conflicting evidence. *Id.* at 255. Rather, the court must view the

evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor. *Id.* (internal citation omitted). The movant bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, then the moving party wins. *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Pub. Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III. Analysis

  A. **Summary judgment on Collins' harassment claims is granted as a matter of law.[2]**

  Defendants argue that Collins' hostile work environment harassment claims fail for two reasons: "(1) Mr. Collins cannot establish a prima facie case, and (2) AutoZone took immediate remedial efforts to address Mr. Collins's complaint." ECF No. 42 at 13. I agree with the second argument. Because I find that the claims fail either way because AutoZone took sufficient remedial measures, I make no ruling on whether the harassment alleged in this case was severe or pervasive enough to constitute a hostile work environment.

---

[2] Nevada's law concerning discrimination and hostile work environment follows the federal standards and thus I consider both claims together. *See Doe v. Wynn Resorts, Ltd.*, 2023 U.S. Dist. LEXIS 19257, at *15 n.13 (D. Nev. Feb. 3, 2023) ("Because the employment discrimination standards in § 1983 and NRS § 613.330 are coextensive with those under Title VII, the Court treats these claims together under Title VII.") (citing *Crawford v. Nev. DOT*, 2019 U.S. Dist. LEXIS 54962, at *4 n.2 (D. Nev. Mar. 31, 2019)); *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases.").

Where the alleged misconduct was by a fellow employee,[3] an employer is only liable for a hostile work environment if "it failed to reasonably respond to the conduct or to the extent that it ratified or acquiesced in it." *Ryan v. Barrick Goldstrike Mines Inc.*, 2021 U.S. Dist. LEXIS 95693, *15 (D. Nev. 2021) (citing *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1017 (9th Cir. 2018), *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006)). Reasonableness is evaluated "only from the perspective of what the employer knew or should have known at the time it acted … [and] as an initial matter, the employer must learn what actually happened." *Id.* (quoting *Campbell*, 892 F.3d at 1017). Remedial action must include some form of disciplinary measures, *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1482 (9th Cir. 1997), which must be "proportionate[ ] to the seriousness of the offense." *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991) (citation omitted) ("Title VII requires more than a mere request to refrain from discriminatory conduct."). Further, prompt action alone is not enough, but "remedial measures must also be effective." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 688 (9th Cir. 2017) (citing *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) ("When the employer undertakes no remedy, or where the remedy does not end the current harassment and deter future harassment, liability attaches for both the past harassment and any future harassment.")).

Here, AutoZone interviewed Collins promptly regarding his complaint and initiated an investigation during which time it did not allow James to work. Casson Dep., Defs.' Ex. 2, ECF No. 42-3 at 47:24–48:10; James Timecards from 1/3/21–3/9/21, Defs.' Ex. 18, ECF No. 42-19.

---

[3] Collins argues that James is a manager, not an employee, and thus a different standard of liability applies to AutoZone here. ECF No. 47 at 21–22. The Supreme Court has held that, for purposes of Title VII, a "supervisor" is an individual "the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013). Collins was not a supervisor because he was unable to hire, fire, promote, demote, issue a corrective action, or set compensation for another employee. Casson Dep., Defs.' Ex. 2, ECF No. 42-3 at 54; Escareno Dep., Defs.' Ex. 4, ECF No. 42-5 at 125:3–22.

AutoZone made accommodations for Collins in the meantime, granting his request for time off while offering him employment at different store locations should he choose to return to work. Following the investigation, AutoZone took disciplinary measures sufficient to ensure the harassment did not continue—terminating James's employment less than a week later. James Corrective Action Review for Termination, Defs.' Ex. 31, ECF No. 42-32; Casson Dep., Defs.' Ex. 2, ECF No. 42-3 at 331:21-34:7. AutoZone then tried repeatedly to contact Collins about the results of the investigation and to arrange his return to work. Collins Dep., Defs.' Ex. 1, ECF No. 42-2 at 144–152:8; Redacted cellphone records of Casson from 2/22/21–3/21/21, Defs.' Ex. 26, ECF No. 42-27. This constitutes prompt, effective remedial action sufficient to vitiate AutoZone's liability for a hostile work environment claim. *See Ryan*, 2021 U.S. Dist. LEXIS 95693, at *16–17.

      Collins argues that AutoZone's response to his complaint was insufficient because it should have (1) been aware that, with his mental health issues and gun, James was a "ticking timebomb" and a danger to Collins as he allegedly had been sexually harassing Collins prior to February 21, and (2) given assurances of Collins' safety regarding James prior to his return to work. ECF No. 47 at 3, 21–22. For the following reasons, both arguments are unavailing.

      The first argument fails because, as Collins admits, he did not complain about James prior to February 21 or otherwise put AutoZone on notice. Collins Dep., Defs.' Ex. 1, ECF No. 42-2 at 182:14–183:13. Simply, AutoZone cannot act on what it does not know. Collins contends that Escareno, as a supervisor, "knew about Mr. James' ongoing sexual harassment, unresolved schizophrenia, and that he carried a gun at work prior to the events of February 21, 2021", and thus AutoZone should have known that James was a "ticking timebomb" toward Collins. However, Collins explicitly testified that James had never directed any sexual harassment or jokes at him prior to February 21. Collins Dep., Defs.' Ex. 1, ECF No. 42-2 at 98:1–3. In fact, he even testified that he was surprised James's advances on February 21 were "towards [him]." *Id.* at 98:4–8. In other words, there was nothing of particular note or concern for Escareno to have escalated or acted upon prior to February 21 regarding James's treatment of Collins. While

James's alleged schizophrenia and gun may be fodder for a negligent hiring, supervision, retention and/or training claim, it is unreasonable to argue that AutoZone did not properly take corrective action for a sexual harassment hostile work environment claim prior to February 21.

The problem with Collins' second argument is that, even to the extent AutoZone was required to give these safety assurances, Collins obstructed AutoZone's ability to discuss any such measures as he chose to ignore Casson's calls following James's termination. Collins Dep., Defs.' Ex. 1, ECF No. 42-2 at 144–152:8. Collins cannot stifle his employer's ability to communicate with him and then complain that his employer failed to communicate something to him. In fact, because he failed to pick up the phone or call Casson back, he was unaware at the time that James had been terminated, and in response to what he would have considered "sufficient" to feel safe returning to the workplace, Collins testified: "I don't know. Maybe putting [James] on leave." *Id.* at 193:18–194:2, 193:2–12. For those reasons, I find that, given the circumstances, AutoZone responded reasonably to Collins' complaint and thus I grant summary judgment in its favor on the hostile work environment claims.

> **B.   Summary judgment on Collins' retaliation claims is granted as a matter of law.**

To state a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two. *Westendorf v. W. Coast Contrs. of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013); *Porter v. California Dep't. of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005).[4]

There is no dispute that Collins engaged in a protected activity by complaining to HR about the alleged sexual harassment. *See Westendorf*, 712 F.3d at 422 (stating that an employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law). However, Collins

---

[4] Nevada's law concerning retaliation follows the federal standards and thus I consider both claims together. *See Doe*, 2023 U.S. Dist. LEXIS 19257, at *37 n.21 ("Nevada law looks to federal discrimination and retaliation cases for guidance in applying state law," and [b]ecause discrimination and retaliation claims under Nevada law are substantially similar to claims under Title VII, the Court's discussion will focus on Title VII.").

retaliation claims fail because he fails to establish that he was subjected to an adverse employment action.

Collins argues that he experienced two material adverse employment actions following his sexual harassment complaint against James: "(1) AutoZone removed Mr. Collins from the workplace instead of Mr. James; and (2) Mr. Collins was constructively discharged." ECF No. 47 at 24. The evidence clearly demonstrates, however, that it was *Collins*, not AutoZone, who facilitated his "removal" from the workplace. Collins repeatedly testified that he needed time off from work while AutoZone repeatedly provided him opportunities to come back, including at different store locations. Moreover, AutoZone's request for Collins to return to the workplace following the conclusion of the investigation, or to resign, was not unreasonable or an adverse employment action. *See McKissick v. City of Reno*, 2019 U.S Dist. LEXIS 119567, at *35 (D. Nev. Jul. 18, 2019) ("Because the evidence supports that Plaintiffs willingly took paid administrative leave and that Plaintiffs were not directed to return to work until a date after the Wall Report was concluded, Plaintiffs' allegation of material adverse action is unsupported.")

Nor has Collins established constructive discharge. To establish a constructive discharge in the context of a hostile work environment claim, Collins must show that the "working conditions [were] so intolerable that a reasonable person would have felt compelled to resign." *McKissick*, 2019 U.S Dist. LEXIS 119567, at *35 (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004)). A reasonable person in Collins' shoes would not have been compelled to resign because James was the root of the issue, and he was not facing the prospect of working with James again. *Id.* at *36 ("A reasonable person in [plaintiff's] position would not have been compelled to resign in Clinger's absence because her claims of severe and pervasive harassment are largely concerning Clinger and his conduct."). Collins was aware that AutoZone was willing to assign him to a different store and if he had not ignored Casson's attempts to call, he would have also been aware that James had been terminated and was no longer in the system at all. For

those reasons, I find that Collins did not suffer an adverse employment action and thus I grant defendants summary judgment on his retaliation claims.

        **C.**    **The court declines to exercise supplemental jurisdiction on the remaining state law claims.**

Remaining are Collins' claims for IIED and negligent hiring, supervision, retention and/or training. Federal courts are courts of limited jurisdiction, and they may exercise supplemental jurisdiction over state-law claims that "are so related to claims in the action" that they form the same case or controversy with the claims over which the court has jurisdiction. 28 U.S.C. § 1367(a). Once a plaintiff's federal claims are gone, the court may decline to exercise supplemental jurisdiction over remaining state-law claims. *Id.* at § 1367(c)(3); *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("[I]t is generally preferable for a district court to remand remaining pendent claims to state court."). Because I have granted summary judgment on Collins' Title VII claims on which federal jurisdiction is based here, I decline to continue to exercise supplemental jurisdiction over their remaining state-law claims and dismiss them without prejudice to Collins' ability to refile them in state court. *See Branch-Noto v. Sisolak*, 576 F. Supp. 3d 790, 806 (D. Nev. Dec. 22, 2021).

**IV.**    **Conclusion**

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [ECF No. 42] is GRANTED. Summary judgment is granted on Counts I and II and Counts III and VI are dismissed without prejudice.

The Clerk of Court is kindly directed to enter judgment accordingly and to close this case.

Dated: March 19, 2024

                                                      _____
                                                      Cristina D. Silva
                                                      United States District Judge